CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
April 01, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **TIMOTHY WAYNE DRAKE,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:22cv00382** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SOUTHWEST VIRGINIA REGIONAL** | ) | **By: Robert S. Ballou** |
| **JAIL,** | ) | **United States District Judge** |
| **Respondent.** | ) | |

Timothy Wayne Drake, previously a Virginia inmate, filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2017 Bristol Circuit Court convictions for distribution of morphine. In its conditional filing order, the court advised Drake that his petition appeared to be untimely and gave him the opportunity to respond, which he did. The pleadings were then served on the respondent through the Attorney General's Office. The respondent has filed a motion to dismiss, and the matter is now ripe for disposition. After consideration of the trial record and the pleadings in this case, I conclude that Drake's petition is untimely, and I will grant the respondent's motion to dismiss.

## I. Background

On February 1, 2016, a grand jury in Bristol, Virginia, issued a 4-count indictment against Drake, alleging distribution of morphine on June 11, 16, 17, and 23, 2015. He was arrested and released on bond on February 5, 2016. His original trial date was to be May 23, 2016, but he did not appear because he was in the hospital's critical care unit at the time.[1]

On May 30, 2017, Drake ultimately pled guilty to all four charges. Prior to the plea colloquy, Drake's attorney advised the trial court that Drake wanted to make sure he could

---

[1] Drake was acquitted on the charge of failure to appear on May 23, 2016. J. Order, Resp't Ex. No. 2, ECF No. 16-1.

present evidence about "why he participated in this activity" in mitigation of sentencing, and counsel thought the court should be aware of that concern before questioning Drake about the voluntariness of his plea. Hr'g Tr. at 4, May 30, 2015, Resp't Ex. No. 7, ECF No. 16-7. The major issue was that Drake felt the confidential informant had threatened and intimidated him, causing him to make the sales of morphine. *Id.*

The trial court began a lengthy discussion with Drake, which included the following:

> THE COURT: Okay. I also want to make sure than you understand that regardless of any thoughts that you may have about whether you were entrapped or not, or whether or not you felt pressure to do it, if you enter your pleas of either Guilty or No Contest today, the Court will find you Guilty irrespective of those reservations that you may have. Do you understand that?
>
> THE DEFENDANT: Sir, the only reservation I have is that I just feel I was under duress and intimidation and threats to make these–
>
> THE COURT: Okay. And as I'm sure your attorney has explained to you, you certainly are under no obligation to enter a plea of Guilty here, or No Contest here today. That you can present those facts and circumstances about how you feel like you were intimidated into making the sales to a jury, and it is ultimately, at that point, it would become the jury's determination as to whether or not they agree with you or disagree with you. Do you understand that?
>
> THE DEFENDANT: So the elements of my intimidation and threats, I'm allowed to bring evidence to those facts?
>
> THE COURT: Well, it wouldn't necessarily be elements, but they would, I mean, certainly you and your attorney would have an opportunity to ask the confidential informant questions as it relates to, um, the transactions.
>
> THE DEFENDANT: Okay.
>
> THE COURT: And then it would be up to the jury to determine, based upon that testimony and any testimony that you desire to give, as to who they find more credible or believable as it relates to whether or not you were entrapped or not (sic). Do you understand that?

> THE DEFENDANT: Yes, sir.
>
> THE COURT: But you understand if the jury ultimately ruled against you, or found against you and found you Guilty, that you would at that point be—whatever sentence they imposed would be the sentence that you would receive?
>
> * * * *
>
> And you could get anywhere from five years to forty years on each count.
>
> THE DEFENDANT: Okay.

Hr'g Tr., 7–8, May 30, 2017.

The trial court continued with the standard plea colloquy after clarifying Drake's options. When he began discussing how a guilty plea limits a defendant's appeal rights, Drake's counsel interjected:

> MR. PROCTOR: And Your Honor, I've explained on that point that since we have no plea agreement here, the, uh—technically, he has a right to appeal as long as the—the likelihood of that appeal being successful, as long as the Court sentences him within the permissible statutory range, that the likelihood of there being any different outcome on an appeal would be extremely small.
>
> THE COURT: Okay. You understand that?
>
> THE DEFENDANT: I don't understand that, Your Honor. I'm sorry. The statutory range? What are you talking about? The five years?
>
> MR. PROCTOR: Yeah, if the Judge sentences you within the forty-year range on each count that—and he does that—the chances of the Court of Appeals making any finding that the case has been handled improperly unless there's a venue or jurisdictional question, would be extremely small.
>
> THE DEFENDANT: I guess. Yes.
>
> THE COURT: Well, I mean, there's no, "I guess," to it. Let's make sure that you understand it.

> THE DEFENDANT: Uh, I don't—no, I don't understand. My thing—my question was—is that do I have to appeal—the right to appeal my sentence if I agree to plead Guilty, I guess is what I'm trying to ask?
>
> THE COURT: Well, as your attorney correctly points out, there certainly is nothing that prohibits any person from noting an appeal.
>
> THE DEFENDANT: Okay.
>
> THE COURT: So if the Court gives you a sentence that you do not like, you are certainly allowed to note an appeal. However, because you have not contested the charges—in other words, you're pleading either Guilty or No Contest, and if the Court sentences you within a permissible range, while you have the right of appeal, the likelihood of that appeal being either granted or successful, is not very good. Because you've entered a plea of Guilty to the charge, so you're not disputing that you're guilty. And the Court has sentenced you within a range that is permissible by law.
>
> And so, while your attorney correctly points out that, certainly you have the right to appeal, realistically, whatever the Court sentences you to as long as it sentences you within a permissible range, will be what it is. And that will be probably how it stays.
>
> * * * *
>
> . . . [D]o you understand Mr. Proctor's advice to you that while you would certainly retain any right to file an appeal that you wished to file, that unless the Court has abused its discretion in some way by sentencing you outside of permissible range, or doing something else that is just blatantly not right—I guess for lack of a better term—that whatever the Court sentences you to is what you're going to get. I mean, do you understand—and the Court of Appeals and the Virginia Supreme Court are not likely to overturn it. So while you may have this right of appeal, realistically, if the Court—the trial Court does what it's supposed to do and conducts a hearing in a fair and impartial way, then whatever the trial Court sentences you to is going to, for all intents and purposes, be your sentence. Do you understand that?
>
> THE DEFENDANT: Yes.

*Id.* at 13–16.

The trial court's entire discussion with Drake, including the plea colloquy, continued from page 3 of the transcript to page 29. After ensuring that Drake understood the effect of a guilty plea in his case, and that by pleading guilty, he was giving up the right to have a jury decide if he had been entrapped or acted under duress, the court asked how Drake wished to plead, reading each indictment individually. Drake pled guilty to all four drug charges and not guilty to the failure to appear. *Id.* at 17–19. Additionally, Drake had completed a written Guilty Plea Questionnaire. R.[2] at 38–39. Drake acknowledged, under oath, that he had answered the questions on the form freely, voluntarily, and truthfully, and that the signature on the form was his. Hr'g Tr., 19–20. He also said that he was "entirely satisfied" with the services of his attorney. *Id.* at 21.

Counsel stipulated that the evidence would be sufficient to prove the elements of each distribution beyond a reasonable doubt, and the prosecuting attorney submitted Certificates of Analysis for the morphine distributed on each of the four dates. The court asked Drake if he understood the stipulation, and Drake said, "yes, sir." *Id.* at 24. Then, he asked Drake, "do you agree with it?" and Drake responded, "yes, sir." *Id.* Next the court again sought to ensure that Drake understood the potential penalties:

> THE COURT: . . . Do you understand that the maximum period of incarceration, that by statute this Court could impose, would be a hundred and sixty years in the state penitentiary . . .?
>
> THE DEFENDANT: That's—if I take it in front of you, that's what you can give me?
>
> THE COURT: Yes. That's the maximum penalty. I'm not saying that the Court will or would impose the maximum. I am simply required by law to make sure that you understand what the maximum penalty is that you are subjecting yourself to.

---

[2] Citations herein to "R." refer to the records of the Bristol Circuit Court, Case No. CR16002143-0, filed electronically in this court, using the page numbers in the lower right corner of each page.

> THE DEFENDANT: What would be the minimum penalty?
>
> THE COURT: Well, I don't know. I mean, it will depend on what the Court hears at the sentencing event.
>
> * * * *
>
> Is there a mandatory minimum?
>
> MR. PROCTOR: --it has to be imposed, but I think any punishment can be suspended.
>
> THE COURT: So, basically, you could receive any time in jail, from one day in jail up to a hundred and sixty years in the state penitentiary.
>
> THE DEFENDANT: That's what I was trying to figure out.

*Id.* at 24–25. After further discussion, in which the court answered Drake's questions about the effect of a conviction on Drake's custody of his children and on his parental rights, the court accepted Drake's guilty pleas and scheduled the matter for sentencing, with trial of the failure to appear being held on the same date. *Id.* at 29.

Before the sentencing hearing, Drake retained new counsel, and the sentencing hearing was postponed. On September 19, 2017, the trial court acquitted Drake of the remaining failure to appear. Counsel then presented a compelling sentencing mitigation case through the testimony of Drake's probation officer and then Drake himself.

The mitigating evidence included that Drake was 53 years old at the time of sentencing, with five children, three of whom were grown. Before 2014, his only record consisted of four misdemeanors—a driving charge, failure to appear, and two assault convictions. He had been the single parent of his youngest two children for several years, as the children's mother had married a registered sex offender. He worked as a self-employed carpenter from 1983 to 2008, under the name Tim's Home Improvements.

By 2008, several health issues prevented him from continuing work, including tuberculosis, chronic granulomatous, COPD, high blood pressure, diabetes, and peripheral artery disease (PAD). He applied for disability in 2006, and a few years later began receiving disability, but health and financial concerns had begun to overwhelm him. By 2014, he suffered from diabetic neuropathy, causing significant pain, for which he was prescribed both oxycodone and morphine. By the time of the sentencing hearing, his diabetes and PAD had progressed to the point where his right foot was in danger of being amputated, and he had blood clots in his left leg. Two weeks before the hearing, Drake was hospitalized following a heart attack.

His health issues did not end with physical concerns. Drake had suffered from a dysfunctional childhood, his biological father having left the family before Drake's birth and his stepfather being a chronic alcoholic who was abusive when he drank. He had two mental health hospitalizations in the early 1990s, one of which followed a suicide attempt.

Drake's stated reason for the four sales of morphine in June 2015 was that the informant threatened to tell authorities in Tennessee where Drake was living, so that he would be arrested on an outstanding warrant for failure to appear on a driving charge. The informant also said things like "it would be a shame if Social Services got involved" and took Drake's kids away. Sent'g Tr., 20, Sept. 19, 2017. Drake stated he was extremely concerned for the welfare of his children if they were returned to their mother or placed in foster care, so he was intimidated to give in to the informant's demands.

In aggravation, the prosecutor pointed out that Drake made four separate sales to the informant in a one-week period, the first sale being the day after he was released on bond for the

charge of distributing oxycodone (later reduced to accommodation distribution).[3] Further, two of the videos recording the sales clearly showed that Drake's son was with him during the sales.

Upon consideration of the evidence and arguments, the court sentenced Drake to ten years on each charge, consecutively, but suspended all but three years conditioned on successful completion of two years supervised probation, for an active sentence at the high end of the guideline range. Drake appealed the conviction and sentence, alleging three issues, including that his pleas were not knowing, voluntary, and intelligent, and that he and his attorney misunderstood the legal issue of entrapment. By per curiam opinion dated August 8, 2018, the Court of Appeals of Virginia upheld the conviction, finding that Drake's pleas had been entered knowingly, voluntarily, and intelligently, and that by pleading guilty, he had waived the right to appeal. Resp't Ex. 3, ECF No. 16-3. The Supreme Court of Virginia refused Drake's further petition for appeal on March 1, 2019. Resp't Ex. 6, ECF No. 16-6. Drake did not file a petition for certiorari with the United States Supreme Court, nor did he file a state habeas corpus petition.

Drake signed his § 2254 petition on June 30, 2022, and the court received the petition on July 7, 2022. Drake raised the following issues:

1. Involuntary guilty plea due to government misconduct;
2. *Brady*[4] violations;
3. Ineffective assistance of counsel; and

[3] Drake was also facing charges in Tennessee for three counts of distributing morphine, also in June 2015, apparently to the same informant. He was ultimately sentenced to six years in Tennessee, to run concurrently with the sentence imposed in Virginia in this case. *In re Autumn D.*, No. E2020-00560-COA-R3-PT, slip op. at 2 (Tn. Ct. App. Oct. 28, 2020) (included in Pet. Attach. 1, ECF No. 1-1).

[4] The Supreme Court recognized a prosecutor's duty to disclose material, potentially favorable evidence in its possession to the defendant before trial in *Brady v. Maryland*, 373 U.S. 83 (1963). A prosecutor's failure to disclose such material, whether intentional or inadvertent, is called a *Brady* violation.

4. Obstruction of justice by law enforcement withholding information and witness tampering.

## II. Discussion

The dispositive issue in this case is whether Drake's petition was timely filed. Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. The statute runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The Supreme Court of Virginia denied Drake's appeal on March 1, 2019. The 90 days in which to petition the United States Supreme Court ended on May 30, 2019. That is the date the judgment became final and on which the federal one-year statute of limitations began running. The statute expired on June 1, 2020 (because May 30 fell on Saturday). Thus, under subsection (A), Drake's petition was untimely.

Drake did not allege any unconstitutional state action that prevented him from filing his petition earlier, rendering subsection (B) inapplicable. Further, Drake did not allege any newly

recognized constitutional rights. Due process violations, particularly *Brady* violations, have been recognized by the Court at least since 1963. The right to effective assistance of counsel and the requirement that guilty pleas be entered knowingly, intelligently, and voluntarily also pre-date this case by decades. Therefore, subsection (C) is not applicable.

In Drake's response to the court's order suggesting that his petition was untimely, he argued that the state had suppressed the evidence that would support his claims, which demonstrates cause for his procedural default. Likewise, he argued that ineffective assistance of counsel in failing to present his constitutional arguments to the state court was another reason for his procedural default. He then argued that he was prejudiced because there is a reasonable probability of a different outcome if the evidence had not been suppressed and if counsel had been effective. The problem with Drake's argument is that "cause and prejudice" is not the standard for avoiding the statute of limitations; "cause and prejudice" saves *timely* habeas claims that have been defaulted in state court and were never considered on the merits by the highest state court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The only possible basis for considering a claim timely under the statute of limitations could be subsection (D), the date on which the factual basis of the claims could have been discovered through due diligence. However, Drake has presented nothing to suggest this, either. He certainly knew whether he felt his pleas were voluntary by the time he was sentenced, because he immediately appealed and argued that the pleas were not voluntary. He has not specifically identified what government misconduct he is alleging, nor when he discovered it. Based on the materials he attached to his petition, he appears to be concerned about criminal records, text messages to the Tennessee prosecutor, incomplete information in the officer's report regarding his 2014 arrest, and that the same officer was involved in both cases.

The attachments to his petition include conviction records for several people, but who those people are and why the records are relevant has not been stated. Only one such record, Richard Lee Davis's misdemeanor domestic assault from 2007, could arguably be relevant since Davis was the confidential informant in Drake's case. Based on his counsel's representation to the court that Drake was concerned about how the system "worked with using confidential informants and people who have some criminal activity and some drug involvement in their own background" (Hr'g Tr., 5, May 30, 2017), it appears that Drake already knew about Davis's conviction when he pled guilty, so that is not a reason to extend the statute of limitations.

Drake knew about inconsistencies between the number of pills the officer claimed to seize and the number of pills he says were in the bottle on October 28, 2014, at the time the pills were seized, before the current charges ever took place. He knew that the officer advised his health care provider he was under arrest when he had not been charged or arrested. Any of that information was available for cross-examination of the officer if the matter went to trial. Drake knew that the same officer handled both cases. He does not explain how any of this represents withholding information, witness tampering, or a *Brady* violation.

That leads to the "12 pages of threats and boastfull (sic) predictions" texted to the Tennessee District Attorney's office, bragging "about [Drake] going to prison" before Drake pled guilty. Pet. Attach. 1 at 1. Drake also says, "It's all in the 2017 transcripts" (*id.*), but nothing in the transcripts mentions text messages from the informant, though Drake's statement in the attachment suggests that he knew about the text messages in 2017,[5] so he cannot say that

[5] In Drake's December 2021 letter to the District Attorney's office in Blountville, Tennessee, Drake stated: "[D]uring my plea hearing, I was represented by Mr. Kyle Vaughn . . . . Mr. Vaughn during the said hearing provided several pages of text messages to one of your assistants that prosecuted the plea." While Drake has not said when he pled guilty in Tennessee, by the time of the Tennessee Court of Appeals decision of October 28, 2020, Drake had already been sentenced in Tennessee, so he had seen those text messages more than a year before he filed the current petition. *See In re Autumn D.*, No. E2020-00560-COA-R3-PT, slip op. at 2–3.

late discovery of this information justifies delaying the statute of limitations. Drake has failed to show that subsection (D) renders his petition timely.

Drake never clarifies exactly how his trial attorney was ineffective, and without showing deficient performance by his attorney, his claim is insufficient. At any rate, he knew or should have known what he thought counsel did wrong long before the statute of limitations had run. Under § 2244(d)(1), the statute of limitations for Drake's petition has expired.

Three possible ways exist for a petitioner to avoid the harsh effect of the statute of limitations: Statutory tolling, equitable tolling, or actual innocence. None of these can save Drake's untimely petition.

A. Statutory Tolling

Section 2244(d)(2) tolls the statute of limitations during the time in which a "properly filed application for State post-conviction or other collateral review . . . is pending." Drake never filed a state habeas petition or other collateral challenge, so the statutory toll never applied. The time for filing a state petition has passed, and filing an untimely state petition would do nothing to revive the expired federal statute of limitations.

B. Equitable Tolling

The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 636, 649 (2010). This test is different from the "cause and prejudice" test for defaulted claims. I will not address diligence, because Drake has not alleged extraordinary circumstances, nor are any apparent in the record. Drake's ignorance of the law is not an extraordinary circumstance nor a basis for equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Ineffective assistance of counsel is also

not an extraordinary circumstance that will equitably toll the statute of limitations. *Holland*, 560 U.S. at 651–52; *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

C. Actual Innocence

In balancing the "societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice exception" to the statute of limitations when a litigant presents new evidence of actual innocence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant. *McQuiggin v. Perkins*, 569 U.S. 383, 393–95 (2013). New evidence of actual innocence, by itself and without an independent constitutional violation, is not sufficient to state a ground for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, the new evidence of actual innocence creates a narrow gateway for consideration of otherwise defaulted claims of constitutional violation.

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal citation omitted). Drake has made no claim of actual innocence. He admits that he participated in the sales of morphine. To establish actual innocence when one has pled guilty, he must show new evidence, not presented at trial, showing by clear and convincing evidence that his guilty plea has resulted in the conviction of one who is actually innocent. *United States v. Fabian*, 798 F. Supp. 2d 647, 686 (D. Md. 2011). Moreover, if the allegations of actual innocence contradict petitioner's sworn statements made during a properly conducted plea colloquy, those allegations are "always palpably incredible and patently frivolous or false." *Id.* (internal citations omitted).

Drake is not factually innocent, nor does he claim to be actually innocent. Further, he has offered no new evidence of actual innocence. New evidence must be reliable and trustworthy eyewitness testimony, exculpatory scientific evidence, or critical physical evidence of innocence that is "so strong that a court cannot have confidence in the outcome" of the proceeding. *Schlup*

*v. Delo*, 513 U.S. 298, 316 (1995). Impeachment evidence—whether impeachment of the investigating officer or of the informant—"is a step removed from evidence pertaining to the crime itself" and "provides no basis for finding a miscarriage of justice" or actual innocence. *Calderon*, 523 U.S. at 563. This is especially true when other evidence of the crime exists, such as the videotapes of the drug transactions and Drake's statements under oath admitting that he distributed the morphine to the informant. Therefore, the actual innocence/miscarriage of justice exception does not relieve Drake from the expired statute of limitations.

## III. Conclusion

Drake's petition is untimely, and none of the exceptions to the statute of limitations apply in this case. Accordingly, I will grant the respondent's Motion to Dismiss.

I decline to issue a certificate of appealability because Drake has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Enter: April 1, 2024

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge